**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **RICKY COPE, JR.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:14-cv-01401-WTL-TAB |
| ) | |
| **CAROLYN W. COLVIN, Commissioner of** ) | |
| **the Social Security Administration,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Ricky Cope, Jr., requests judicial review of the final decision of Defendant, Carolyn W. Colvin, Commissioner of the Social Security Administration ("Commissioner"), denying Mr. Cope's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The Court rules as follows.

### I.     APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is

not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).  At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d).  At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f).  At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).  The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).  In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## II.     PROCEDURAL HISTORY

Mr. Cope protectively filed for DIB on October 7, 2011, alleging he became disabled on May 23, 2011, primarily due to rheumatoid arthritis, bursitis, obesity, asthma, and gastroesophageal reflux disease ("GERD").  Mr. Cope was born on July 14, 1978, and he was thirty-two years old on the alleged disability onset date.  Mr. Cope has a high school education and he has prior relevant work experience as an assistant manager, correctional officer, field service manager, landscaper, and drywall installer.

Mr. Cope's application was denied initially on December 6, 2011, and again upon reconsideration on January 12, 2012.  Following the denial upon reconsideration, Mr. Cope requested and received a hearing in front of an Administrative Law Judge ("ALJ").  A video hearing, during which Mr. Cope was represented by counsel, was held before ALJ Mark Naggi on April 1, 2013.  The ALJ issued his decision denying Mr. Cope's claim on May 6, 2013, and the Appeals Council denied Mr. Cope's request for review on July 2, 2014.  Mr. Cope then filed this timely appeal.

## III.     BACKGROUND

*Medical Evidence*

Mr. Cope's medical evidence of record begins in November 2008, when he saw Dr. Lisa Martin, his primary care physician.  Mr. Cope complained of intermittent lower back spasms and acid reflux.  Dr. Martin diagnosed Mr. Cope with GERD and muscle spasm and prescribed Nexium and Flexeril oral tablets.

On July 7, 2009, Mr. Cope saw Dr. Martin again, complaining of asthma, shortness of breath, and coughing.  Dr. Martin diagnosed Mr. Cope with asthma, prescribed Ventolin HFA Inhalation Aerosol Solution and Advair Diskus Inhalation, and scheduled a follow-up

appointment. On August 13, 2009, Mr. Cope had a follow-up appointment with Dr. Martin, during which he complained of grogginess caused by the side effects of his muscle spasm medication; Dr. Martin prescribed Zanaflex for his muscle spasms. Mr. Cope's asthma symptoms, however, were essentially gone.

On August 12, 2010, Mr. Cope met with Dr. Martin again, complaining of joint and back pain. During a physical examination, it was noted that Mr. Cope's ankles cracked and popped with a limited range of motion; his knees did as well, but to a lesser extent. X-rays of his hands, wrists, thoracic spine, and lumbar spine were all unremarkable.

On September 14, 2010, Mr. Cope met with Dr. Martin for a follow up appointment concerning his joint pain. Dr. Martin diagnosed Mr. Cope with arthralgia multiple. She prescribed Relafen, an anti-inflammatory, which Mr. Cope initially reported helped ease his pain; however, the pain in his shoulders, hips, and knees reoccurred within a month's time.

On March 26, 2011, Mr. Cope saw Dr. Martin for worsening rheumatoid arthritis pain all over his body. Mr. Cope also reported that the methotrexate he had been prescribed was not working.

In May 2011, Mr. Cope started seeing a rheumatologist. At the exam, Mr. Cope reported little pain relief with his medications and significant stiffness in the mornings that limited his movement. He was found to be tender to palpitation in the cervical area and on his shoulders and elbows bilaterally. Mr. Cope had no detectable joint erythema, swelling, or range of movement limitations; he did, however, have mild wrist and hand swelling with slightly decreased range of movement in his hands. Mr. Cope was prescribed Humira; at a follow-up appointment, however, an intravenous regimen of Infliximab was started. The rheumatologist

noted that Mr. Cope had inflammatory polyarthritis, consistent with rheumatoid arthritis, and that he had not responded to methotrexate.

At a follow-up appointment, Mr. Cope was noted to have: tenderness over the cervical spine and cervical paraspinous muscle; tenderness over the left shoulder capsules and bursa with moderately decreased interventional radiology results; tenderness in the left elbow with probable 15 degree contracture; mild tenderness and swelling with restricted range of motion in his wrists; and moderate swelling of the PIP and MCP joints in his hands with a 25% fist.

In June 2011, Mr. Cope sought emergency room care for a headache. No cognitive, respiratory, or musculoskeletal abnormalities were noted. His reflexes, range of movement, and gait were within normal limits.

In September 2011, Mr. Cope had an appointment with his rheumatologist and reported some improvement. Nevertheless, Mr. Cope continued to experience ongoing stiffness, despite the oral and intravenous medications prescribed to him.

On November 2, 2011, Dr. Corcoran, a consulting doctor, opined that Mr. Cope's condition equaled listing 14.09A2 because a review of the evidence showed that he had CCP-positive Rheumatoid Arthritis, significant joint complaints in both hands with pain, swelling, 50% fist, tenderness, slightly decreased IR/ER in his wrists, and suboptimal control of his symptoms with methotrexate.

During a December 3, 2011, consultative examination, Mr. Cope ambulated without difficulty. He was able to get on and off the exam table and transfer from a seated to a standing position without limitation. Mr. Cope also had no appreciable edema, clubbing, cyanosis, or grip deficiencies, and his fine/gross manipulative functions remained intact. His straight leg raise test was negative, he heel/toe walked without issue, and his strength was a full five out of five. The

only noted abnormality was Mr. Cope's ability to squat. Mr. Cope subjectively endorsed pain with all ranges of movement, but there were no limitations noted.

Dr. Helfin completed a physical Residual Functional Capacity Assessment ("RFC") on December 6, 2011. Dr. Helfin opined that Mr. Cope was able to lift and/or carry fifty pounds occasionally, lift and/or carry twenty-five pounds frequently, and sit, stand, and/or walk for about six hours in an eight-hour workday. He was given no limitations on pushing or pulling, but was noted to never climb ladders, ropes, or scaffolds and to only occasionally climb ramps and stairs, crouch, or crawl. Dr. Helfin opined that Mr. Cope could frequently balance, stoop, and kneel; however, he noted that Mr. Cope should avoid even moderate exposure to fumes, odors, gases, dusts, poor ventilation, extreme cold, slick and uneven surfaces, and wetness.

In January 2012, Mr. Cope had an appointment with Dr. Martin. Dr. Martin opined in her physical RFC that Mr. Cope would be incapable of completing an eight-hour work day due to the combined impact of his impairments. Dr. Martin opined that Mr. Cope could: frequently lift and/or carry up to ten pounds; occasionally lift and/or carry up to twenty-five pounds; occasionally bend and rotate his trunk, climb, reach over his head, extend his arms, and flex his neck; but could not squat, crawl, or kneel. She also noted that Mr. Cope was moderately restricted from unprotected heights and being around moving machinery. Dr. Martin's examination, however, showed Mr. Cope's gait and posture were normal and that he had no pulsation, respiratory, or general range-of-movement limitations. Mr. Cope's noted abnormalities were wrist and hand related.

In September 2012, Mr. Cope had an appointment with his rheumatologist; he reported some improvement with the administration of Enbrel but continued to endorse ongoing pain.

6

The rheumatologist noted ongoing cervical, shoulder, and elbow tenderness, and Mr. Cope's hand and wrist tenderness was noted to be more severe.

In December 2012, Mr. Cope started treatment with a pain management physician. In January 2013, Mr. Cope reported that he was not interested in changing his medication regimen as it was doing a good job of controlling his pain; he ranked his pain to be, on average, a five on a ten-point scale. The pain management specialist noted no upper or lower extremity atrophy, but found Mr. Cope's gait to favor his right side. Mr. Cope was noted to have no hand or wrist inflammation, and his general body strength was five out of five. His hand strength, however, was diminished,

*Hearing Testimony*

At the hearing, Mr. Cope testified that he was unable to work due to severe pain in his hands, wrists, hips, and knees. Mr. Cope testified that he lived with his wife and two children and that he had a driver's license. He testified that he starts his day by taking all of his medications and making his children pop-tarts for breakfast. He then proceeds to sit down for forty to forty-five minutes, reclining with his feet up and a pillow under the back of his legs. He testified that he drives his oldest son to school and cares for his younger son during the day, getting him food, reading to him, and watching TV with him. Mr. Cope testified that he left his previous job as a corrections officer because he had to have a lot of help due to his pain.

The ALJ also heard testimony from James Radke, a Vocational Expert ("VE"). The ALJ asked the VE to consider a hypothetical individual with Mr. Cope's age, education and work experience who could work with the following restrictions:

> less than a full range of light work, occasional lifting 20, frequently 10, sit for six hours, but stand and walk in combination only for two. Person . . . could never work around unprotected heights, never work around moving, mechanical parts, and by that I mean inherently dangerous machinery, they should avoid concentrated

>exposure to . . . fumes, odors, dust, gasses and poor ventilation. . . . He would also need to avoid slick or uneven surfaces. . . . [N]o overhead reaching, and he's limited to frequent fingering and frequent handling.

R. at 75-78. The VE testified that such an individual could perform work as a receptionist, general office clerk, and telephone order taker.

## IV.  THE ALJ'S DECISION

The ALJ determined at step one that Mr. Cope had not engaged in substantial gainful activity since May 23, 2011, the alleged onset date. At steps two and three, the ALJ concluded that Mr. Cope had the severe impairments of "rheumatoid arthritis (RA) with bursitis and an obese body habitus," R. at 18, but that his impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ determined that Mr. Cope had the RFC to perform light work with certain postural limitations:

>The claimant has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk for up to 2 hours in an 8-hour work period, and sit for up to 6 hours in an 8-hour work period. The claimant must avoid all work at unprotected heights, and around dangerous moving machinery. The claimant must avoid concentrated exposure to extreme cold, humidity, and pulmonary irritants such as dust, odors, gases, and fumes. The claimant must avoid slick and uneven terrain, he cannot overhead reach with either upper extremity, and he is limited to frequent bilaterally fingering and handling.

*Id.* at 19. Given this RFC, the ALJ determined that Mr. Cope could not perform any of his past relevant work. At step five, the ALJ determined that Mr. Cope could perform the requirements of a few representative occupations such as general office receptionist, office clerk, and order taker. Accordingly, the ALJ concluded that Mr. Cope was not disabled as defined by the Act.

## V.     DISCUSSION

In his brief in support of his complaint, Mr. Cope argues that the ALJ erred in his credibility determination and in his Listing analysis. The Court addresses both arguments below.[1]

### A. Credibility

Mr. Cope first argues that the ALJ erred in assessing his credibility because he made an impermissible inference concerning Mr. Cope's reasons for filing for disability. In his opinion, the ALJ stated the following:

> Most notable was the claimant's decision to apply for disability benefits. Upon review of the claimant's Veteran's records . . . it is clear that in order for him to continue to receive his VA benefits, he had to apply for disability. Thus, it is questionable as to whether the claimant's conditions actually prompted the filling, or if it was merely a procedural step required by another governmental entity.

*Id*. at 22. The Court agrees with Mr. Cope that the reason he applied for benefits does not bare on his credibility. It was improper for the ALJ to consider this factor in his credibility determination and is a reversible error that requires remand.[2]

Mr. Cope next argues that the ALJ impermissibly played doctor by "improperly substitut[ing] his own, non-professional opinion for that of [the claimant's] treating physician[s]." *Liskowitz v. Astrue*, 559 F.3d 736, 741 (7th Cir. 2009). The ALJ stated that he found "problematic . . . the claimant's testimony that he had not undergone any cortisone based

---

[1] Mr. Cope also argues that the ALJ erred in failing to account for Mr. Cope's "required" wrist braces and the "impact the use of these devices could have on work functions (handling and fingering in particular)." Pl.'s Br. at 22. The claimant has the burden of proof for steps one through four, including the burden of proving the necessity of his wrist braces. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(iv); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The medical evidence cited by Mr. Cope shows that he wears braces to alleviate pain. *See* R. at 366, 422. However, there is no evidence suggesting the braces were prescribed or "medically required."

[2] Indeed, both parties note that it was not Mr. Cope's VA benefits that required him to apply for disability, but rather, his long term disability provider.

9

joint injections since his time in the military, which according to his discharge papers was in 2000." R. at 21-22.  The Court found no medical or non-medical evidence in the record that a cortisone shot was ever suggested by any of Mr. Cope's physicians.  In the absence of such evidence, there is no basis for the ALJ to opine that the absence of such treatment is significant.  Accordingly, the Court agrees that this, too, was not an appropriate basis for the ALJ's credibility determination and requires remand.

After eliminating the ALJ's improper considerations, the only remaining reason given for the ALJ's credibility determination is the ALJ's belief that Mr. Cope's subjective complaints of pain "are not consistent with the available objective medical record." *Id*. at 20.  "[O]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective medical evidence." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)).  In addition to the objective medical evidence, on remand, the ALJ should assess his credibility in light of the factors set forth in Social Security Ruling 96-7p.

### B.  Listing

Mr. Cope also argues that the ALJ erred in finding that his physical impairments did not meet or medically equal Listing 14.09(A)(2), inflammatory arthritis.  The Court agrees that the ALJ failed to articulate his reasons for crediting some medical opinions over others.  Specifically, the ALJ failed to explain why he credited the opinion of Dr. Heflin—that Mr. Cope did not meet the Listing—over that of Dr. Corcoran—that Mr. Cope did meet the Listing.  The ALJ should correct this omission on remand.

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 8/7/15

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.